Anderson, J.,
delivered the opinion of the court.
On the 15th day of November 1862, the defendant, John E. Hamilton, borrowed from the assignor of the plaintiff, six hundred dollars in Confederate States treasury notes, for which he and his father, John Hamilton, gave their joint and several bond. On the 30th of June 1866, the plaintiff in error brought suit against the defendants, upon this bond, in the Circuit court of Augusta, and obtained judgment for $240, with interest from the 17th of October 1865, and costs. And the cause is brought here by the plaintiff upon awrit of error to that judgment.
The plaintiff' insists that the Circuit court erred in *276 rendering a judgment for less than the face of the bond»' contends that although the consideration of the bond ’was depreciated Confederate currency, worth at the time in relation to gold as a standard of value, only one dol^ar f°r three> upon the authority of Boulware v. Newton, 18 Gratt. it was a contract of hazard, and he is entitled to the sum nominated in the bond in good money.
The defendants insist that it was not a contract of hazard ; and contend that if it was a contract not solvable in Confederate money, but for good money, as the face of the bond imports, and the plaintiff claims, it is usurious, and they were entitled to judgment upon the issue made-by their plea of the statute of usury. But they say it was a Confederate contract and liable to be scaled.
The first question then which we have to consider is-was it a contract of hazard ? Does it so appear from the face of the bond ? The fii’st clause imports an obligation to pay presently. It is in these words, “ On demand we- or either of us bind ourselves, our heirs, &c., to pay Jacob Stover the just and full sum of six hundred dollars, without interest, it being for money borrowed.” If this were all, if the instrument contained nothing more, it is clearly an obligation to pay six hundred dollars in prraesenti; and the obligee could, immediately after the execution of the bond, have demanded payment; and the obligors could have made payment, whether demanded or not. But the bond does not stop there. It proceeds in these words, “ On the following conditions, that no interest will be required until the money is demanded, then a reasonable time will be given by said Stover to pay the im, when interest will begin and contim- demand till paid.” What is meant by this provision ? Evidently it was intended to subject the obligors to interest after the obligee specially demanded payment; that is when he gave them notice that the money was wanting ; which I think is-the meaning. It was also intended to inhibit the obli *277 •gee from immediately pressing the collection, and to allow the obligors reasonable time after such notice was given, to make payment; they being chargeable with interest from the date of the notice.
Does it limit or negative the right of the obligors to make payment, at any time, before it is demanded by the ■obligee ? I think not. It is very plain from the language, that it was not intended to be restrictive of the rights of the obligors, but that it was intended for their benefit, and was only restrictive of the rights of the obligee except as to interest. The right of the obligors to ■make payment an hour, a month, a year, or at any time after the obligation was given, was not changed by this provision; the correlative obligation rested upon the obligee to receive payment whenever they tendered it, whether before or after he made a special demand for it. Such we think is the meaning of the written instrument; such is the natural import of its terms. Is it varied by the parole evidence which has been introduced by permission of the statute in such cases ? From that it appears that John E. Hamilton, when this loan was negotiated, belonged to the army ; and fearing that the plaintiff might call on Mm when it would not suit him to pay, declined to borrow the money unless the lender would agree to charge no interest until he demanded the money, and to give him a reasonable time, after demand made, to raise the money. To this the obligee agreed ; and those conditions were put in the bond at the instance of the defendant, and for his benefit. It is obvious that the lender knew that it was for this purpose they were proposed by the borrower. But it seems that he had, at the time he acceded to them, a secret intention, (for it was confined to his own breast), to use them for another and a very different purpose. He intended not to make demand until the Confederacy failed, or until ■Confederate treasury notes ceased to circulate, and until good money prevailed; vainly imagining that the pro *278 vision which had been proposed by the defendant for a Pm‘Pose 80 different, might be construed to limit his right to make payment until he had demanded it, and thus to get from the defendant $600 in good money for the Con-money he loaned him, which he knew to be worth at the time only $200 in gold; and this intention he concealed from the defendant. But in this he deceived himself; for, as we have seen, the provision will not bear the construction which he secretly gave to it; but imports what was really the intention of the borrower when he proposed it, and what the lender knew to be his intention when he acceded to it. The parole evidence does not, therefore, conflict with the construction and effect which we give to the language of the bond, to wit: that the obligee could not limit and restrict the right of payment by the obligors, by delaying demand of payment. But, on the contrary, the parole evidence-shows that those provisions were inserted for a different purpose, and were not designed to limit the obligors in their right to make payment whenever they chose ; and are therefore entirely consonant with the language of the bond.
This case is, therefore, not analogous to Boulware v. Newton. In that case the obligation was to pay “on demand, after three months’ notice to pay.” In this, it is to pay on demand;” with condition, only restrictive of the right of the obligee to press the collection until a reasonable time after he had given notice that payment was required. In that case it is expressly stipulated that the obligee “ shall not be required to receive the money, except at his pleasure.” He had, therefore, the unqualified right to fix the time of payment, and could wait until there was a better currency, or until the war closed,, though it lasted for ten years or longer, before he made it payable. And it being payable “ in current funds,” by its express terms, it was held, that he could demand payment in the currency which prevailed at the time *279 he elected to make it payable, whether Confederate or [Federal, accordingly as the war might result; it being a necessary implication, that such was the evident intention of the parties in the contract. But in this case, as we have seen, the obligee was bound to receive payment whenever offered, whether before, or after, it was specially demanded by him. We do not think, therefore, that the decision in Boulware v. Newton, which turned upon the construction to be given to the terms of the contract in that case, has any application to this.
Wo are also of opinion that the contract in this case was entered into, with reference to Confederate notes as a standard of value, and was solvable in the same kind of currency, and that, therefore, it is not subject to the statute of usury, which is pleaded. And that, as the defendants could have paid at the date of the obligation, according to its terms, and legal effect, the scale should he applied as of that date. This seems to have been the purpose of the court below, though it is forty dollars in excess of what the plaintiff understood the scaled value to be. That being the ascertained value by the learned judge of the Circuit court, who had all the evidence before him; and the error, if any, not being to the prejudice of the plaintiff', this court will not disturb the judgment on that ground.
Upon the whole, we are of opinion that there is no error in the judgment of the court below, for which it ought to be reversed; but are of opinion to affirm it.
Judgment affirmed.